COMMONWEALTH *vs.* JOHN J. TOOMEY.

Suffolk.    February 7, 1966. — March 4, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Conflict of Interest. Massachusetts Turnpike Authority. Commonwealth,* Department or commission. *General Court. Statute,* Validity. *Constitutional Law,* Due process of law. *Words,* "State department or commission."

The Massachusetts Turnpike Authority, although a "public instrumentality" and "placed" in the State Department of Public Works, was not a State "department or commission" within the meaning of those words in G. L. c. 268, § 10.   [347–350]

That the Legislature created the Massachusetts Turnpike Authority and gave it general power to contract did not bring contracts made by the Authority within the terms of G. L. c. 268, § 10.   [350–351]

A member of the Legislature did not commit any violation of G. L. c. 268, § 10, by receiving a commission with respect to a contract of insurance between the Massachusetts Turnpike Authority and insurance companies insuring certain property of the Authority.   [347, 351]

INDICTMENT found and returned on April 22, 1965.

Certain questions were reported by *Tauro*, C. J.

*Walter H. McLaughlin, Jr. (George A. McLaughlin* with him) for the defendant.

*Sumner H. Babcock,* Special Assistant Attorney General (*John J. Madden & Marvin R. Finn,* Special Assistant Attorney General, with him), for the Commonwealth.

WHITTEMORE, J.   This is a report by a judge of the Superior Court pursuant to G. L. c. 278, § 30A, of issues arising on the defendant's motion to dismiss an indictment.   The indictment in two counts charged violation of G. L. c. 268, § 10,[1] in that the defendant while a member of the General Court was "personally interested, directly and indirectly, in a contract made by the Massachusetts Turnpike Authority, a body politic and corporate established within the state Department of Public Works, in which the Commonwealth was an interested party, and did receive a commission, bonus, present and reward from the person making and performing such contract."

Particulars filed by the Commonwealth averred that the defendant was interested in, and, in April 1962, received a commission of $4,620 in respect of a contract of insurance between the Turnpike Authority and a group of insurance companies that "insured the . . . Callahan Tunnel against property damage" from November 11, 1961, to November 11, 1964, and that the Commonwealth had "an interest in the secured availability of funds to repair any damage to" the tunnel inasmuch as title to the tunnel vests in the Commonwealth on the retirement of the Turnpike Authority's bonds.

---

[1] Repealed by St. 1962, c. 779, § 3, effective May 1, 1963.

General Laws c. 268, § 10, provided in part: "A member of the general court, or of the executive council, or of a state department or commission, who is personally interested, directly or indirectly, in a contract made by the general court or by either branch thereof or by such department or commission or by its authority, in which the commonwealth is an interested party; or a person, so interested, who alone or with others represents the commonwealth in making such contract; or such member or person who receives a commission, discount, bonus, present or reward from a person or persons making or performing such contract . . . shall be punished . . . ."

The reported questions are "(1) whether the alleged actions of the defendant, as described in the Commonwealth's indictment and particulars, constitute, as a matter of law, a conflict of interest under G. L. c. 268, § 10, and (2) whether the language of G. L. c. 268, § 10, meets the standards of clarity and definiteness as to the defendant in this case to satisfy the requirements set forth in *Commonwealth* v. *Slome,* . . . [321 Mass. 713, 715]."

Two basic issues among the several argued are in our view dispositive: (1) For purposes of this penal statute is the Turnpike Authority a "state department or commission"; (2) Are contracts made by an agency of State government which is not described in the statute nevertheless within the terms of the statute because the General Court created the agency and empowered it to contract?[2]

1.   The Turnpike Authority, like similar "public corporation[s]" (*Massachusetts Turnpike Authy.* v. *Commonwealth,* 347 Mass. 524, 527–528) created in recent decades, is "a public instrumentality performing an essential governmental function." St. 1952, c. 354, § 3, as amended. As such it is "an agency of State government." *Gardner*

---

[2] The statute presents and the parties have fully argued other questions of construction: Does the statute apply only to contracts made by the body of which the defendant is a member? Do the words "or by its authority" relate only to the immediately precedent words "such department or commission"? Is the described contract of insurance a contract in which the Commonwealth is an interested party? In our view it is unnecessary to determine whether the statute in these other aspects is adequately clear.

v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 562. But in essential aspects such authorities are unlike the departments and commissions of the State that function within the statutory framework for executive and administrative action and in their lawful acts and contracts act directly for and bind the Commonwealth. In contrast, an authority constituted as is the Turnpike Authority has separate corporate existence, with plenary powers and makes its own contracts.[3] *Waite Hardware Co.* v. *Ardini & Pfau, Inc.* 339 Mass. 634, 637 (Massachusetts Turnpike Authority). See *Johnson-Foster Co.* v. *D'Amore Constr. Co.* 314 Mass. 416, 419 (housing authority); *Opinion of the Justices,* 322 Mass. 745, 752 (housing authorities); *Opinion of the Justices,* 334 Mass. 721, 734 (Massachusetts Port Authority).

The distinction between departments and commissions on the one hand and largely independent authorities on the other, as agencies of State government, is recognized in other statutes.[4]

The Commonwealth suggests that the Turnpike Authority should be understood to be a ''department'' because by St. 1952, c. 354, § 3, it is ''placed in the state department of public works.''[5] The essential distinction between a de-

---

[3] The Authority by St. 1952, c. 354, § 5, may (b) adopt an official seal; (d) sue and be sued in its own name; (g) issue bonds payable solely from tolls and revenues; (j) acquire, hold, and dispose of real and personal property; (k) exercise the power of eminent domain; (m) make contracts; (n) engage employees and agents and fix their compensation; (o) receive grants and contributions; (p) ''do all acts and things necessary or convenient to carry out the powers expressly granted.'' The Authority does not enjoy sovereign immunity. § 15. Its debts are not those of the Commonwealth; it is not supported by public funds; the Commonwealth's credit is not pledged in its behalf. § 2.

[4] General Laws c. 268A (Conduct of Public Officials and Employees), inserted by St. 1962, c. 779, § 1, in § 1 (p) defines ''State agency'' as ''any department of state government including the executive, legislative or judicial, and all councils thereof and thereunder, and any division, board, bureau, commission, institution, tribunal or other instrumentality within such department, and any independent state authority, district, commission, instrumentality or agency, but not an agency of a county, city or town.'' See also St. 1962, c. 733, amending G. L. c. 11, § 12, which adds to the requirement that the State Auditor make an audit of ''the accounts of all departments, offices, commissions, institutions and activities of the commonwealth'' the words ''including those of districts and of authorities created by the general court.''

[5] The statute provides: ''There is hereby created and placed in the state department of public works a body politic and corporate to be known as the 'Massachusetts Turnpike Authority,' which shall not be subject to the supervision and regulation of the department of public works or of any other de-

partment and an authority is not overcome by this classification. The statutory requirement of certain specified approvals and other action by the department (see fn. 5) are not dependent upon the "placing" of the Authority in the department. They do not call for supervision or regulation by the department. They suggest the independence of the doings of the Authority. The probable reason for the "placing" and its insignificance in determining the nature of the authority are indicated in *Opinion of the Justices,* 334 Mass. 721. The Justices noted that (p. 733) by a proposed bill the Massachusetts Port Authority was only "nominally" placed in the Department of Public Works. With respect to the question whether the pending bill was constitutional in view of art. 66 of the Amendments to the Constitution of the Commonwealth which requires that "every executive and administrative office, board and commission" shall be placed in one of the twenty departments into which "the executive and administrative work of the commonwealth" must be organized, the Justices said at p. 739: "Since we are of opinion that the Authority would

partment, commission, board, bureau or agency of the commonwealth except to the extent and in the manner provided in this act." Section 1 of the statute requires that the location of the turnpike be approved by the department. By § 5 (k) the Authority is to give security to the State Treasurer in such amount and in such form as may be determined by the department for the payment of land taking damages. Section 6 requires the assent of the department to the Authority's incorporation in the turnpike of any existing State highway or part thereof. Section 7 requires the department to approve the relocation of any public highway. Section 17 provides that when bonds have been paid or provided for, the turnpike, if then in good condition and repair to the satisfaction of the department, shall become a part of the State highway system to be maintained and operated by the department and that all machinery, equipment and other property of the Authority shall then vest in the Commonwealth and be delivered to the department. Section 18 directs the department to make available to the Authority all its data useful in making surveys and studies and provides that "the department may furnish such assistance in making investigations and in preparing designs . . . as may be agreed upon between . . . [them], the cost . . . incurred by the department to be paid by the Authority." This is to be read with § 4 (c) providing that any obligation or expense incurred by the department with the approval of the Authority for traffic surveys, borings, preparation of plans and specifications, and other engineering services in connection with the turnpike shall be part of the cost of the turnpike and reimbursed to the Commonwealth. Statute 1958, c. 598 (for the construction and operation by the Turnpike Authority of an additional East Boston tunnel), has references to the department similar to most of the foregoing and, in § 19, provides also that the department may "furnish such assistance in making investigations, in preparing designs for the tunnel and in the operation and maintenance of both tunnels as may be called for by the Authority and the cost thereof hereafter incurred shall be paid by the Authority."

be a corporation in its own right and not part of the machinery of the government, we think it would not be an executive or administrative office, board or commission within the scope of art. 66, even though by the pending bill it is 'placed' in the department of public works but without being subject to the supervision or regulation of that department."

The Commonwealth also suggests that, notwithstanding the absence in G. L. c. 268, § 10, of clearly appropriate words to describe the Turnpike Authority, the purpose of the statute supports construing the word "department" to include it. The Commonwealth points out that the Turnpike Authority is a public instrumentality with which the members of the Legislature are frequently concerned.[6] Hence a legislator's financial interest in contracts of the Authority presents the possibility of "conflict between [the legislator's] private interests and [his] official duties" (St. 1961, c. 610, § 1, Code of Ethics) in respect of legislation from time to time sought by or proposed to affect the Authority.[7]

These considerations undoubtedly suggest what might have been appropriate or intended but they are insufficient to show that the State agencies named in the statute clearly and plainly include the Turnpike Authority. "A statute creating a crime . . . must fix with a reasonable degree of definiteness what it requires or prohibits. . . . A citizen is entitled to protection from prosecution unless the statute on its face penalizes the particular conduct with which he is charged." *Commonwealth* v. *Slome,* 321 Mass. 713, 715.

2. Every contract made by the Turnpike Authority is made by authority of the General Court in the sense that the Turnpike Authority's power to contract stems from the

---

[6] See St. 1954, c. 623; St. 1955, cc. 47, 552, 653; St. 1956, cc. 99, 659; St. 1957, cc. 292, 349, 728; St. 1958, cc. 290, 384, 598; St. 1959, c. 416; St. 1960, c. 28; St. 1962, c. 760; St. 1963, c. 505, c. 801, § 84; St. 1964, c. 572; St. 1965, c. 446.

[7] This record does not show that the insurance contract on which the commission was paid to the defendant was placed through him otherwise than in the due course of a private business or that it was so placed because he was a legislator.

creating enactment of the General Court. In this sense every contract of every Massachusetts corporation of every class and kind is made by authority of the General Court. The statute certainly does not make plain, however, an intention to include by the phrase "by its authority" all contracts of domestic corporations in which the Commonwealth is an interested party.

The scheme of the statute is to identify the contracts to which its prohibitions apply by specification of the agencies that may act for or in the interest of the Commonwealth in making them, or in authorizing that they be made. Consistently with this scheme the statute could have enlarged the category of contracts to include a contract made by any public corporation created by the General Court, and acting "by its [general] authority" in the public interest. The direct way to have done this would have been to include with the recitals "by the general court or . . . either branch thereof or . . . such department or commission," some such specific words as have been used in G. L. c. 268A. See fn. 4. The absence of such specification and of any necessary or strong implication that the words "by its authority" refer to the general contracting power granted by the Legislature in the act of incorporation requires that this construction be rejected within the applicable rule.

3. The answer is "No" to each reported question. The indictment is to be dismissed.

*So ordered.*