COMMONWEALTH *vs.* JOHN J. KELLEY, JR.

Suffolk.    April 6, 1970. — June 29, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Conspiracy.    Bribery.    Massachusetts Turnpike Authority.    Public Officer.*

Respecting an indictment charging that the defendant "did conspire
together and with . . . the Chairman of the Massachusetts Turnpike
Authority . . . to use the economic power of the . . . Authority,
over which the . . . [chairman] exercised executive control, to cause
to be paid to the . . . [defendant], who was then the son-in-law
of . . . [the chairman], large sums of money to which he was not
entitled, by the following means," and then specifying several un-
lawful and criminal means by which the object of the conspiracy was
to be accomplished, including "stealing money" of the Authority, it
was held that the indictment was sufficient, even in the absence of
any evidence of larceny by the defendant, if the evidence established
one of the other specified means of accomplishing the object of the
conspiracy. [45–46]
Respecting an indictment charging that the defendant "did conspire
together and with . . . an executive officer of the Commonwealth to
wit: the Chairman of the Massachusetts Turnpike Authority . . .
to use the economic power of the . . . Authority, over which the . . .
[chairman] exercised executive control, to cause to be paid to the
. . . [defendant], who was then the son-in-law of the . . . [chair-
man], large sums of money to which he was not entitled, by the fol-
lowing means," and then specifying as means for accomplishing the
object of the conspiracy conduct which would violate G. L. c. 268,
§§ 8 or 9, if the chairman was then an executive officer of the Common-
wealth, or would violate c. 271, § 39, if he was not, it was held that
the indictment sufficiently charged criminal means for accomplishing
the object of the conspiracy. [47]
Respecting an indictment charging that the defendant "did conspire
together and with . . . an executive officer of the Commonwealth to
wit: the Chairman of the Massachusetts Turnpike Authority . . .
to use the economic power of the . . . Authority, over which the
. . . [chairman] exercised executive control, to cause to be paid to
the . . . [defendant], who was then the son-in-law of the . . . [chair-
man], large sums of money to which he was not entitled, by the fol-
lowing means," and then specifying several unlawful and criminal
means by which the object of the conspiracy was to be accomplished,
it was held that the object was illegal and involved great danger to
the public interest, irrespective of whether the chairman was "an

executive officer of the Commonwealth," or was an "officer" described in G. L. c. 268, § 8, or an "officer or agent of, or a person employed by," the Commonwealth within § 9. [48–49]

INDICTMENT found and returned in the Superior Court on April 22, 1965.

The case was reported by *Forte, J.*

*Thomas E. Dwyer* (*John L. Murphy, Jr.*, with him) for the defendant.

*Marvin R. Finn*, Special Assistant Attorney General, for the Commonwealth.

QUIRICO, J. The defendant has been tried, found guilty and sentenced on an indictment charging him with the crime of conspiracy. Sentence has been stayed by the trial judge pending our decision on questions reported by him on the sufficiency of the indictment. Further questions are raised on the defendant's bill of exceptions but are not yet before us.[1]

The indictment charged that: "John J. Kelley, Jr. and Highway Traffic Engineers, Inc., a Massachusetts Corporation, at Boston and at divers other places to the grand jurors unknown, did conspire together and with William F. Callahan, now deceased, who was then an executive officer of the Commonwealth to wit; the Chairman of the Massachusetts Turnpike Authority, a body corporate and politic, organized under . . . [St. 1952, c. 354], and with Edgar P. Copell and Thomas D. Connolly, all of whom are named herein as co-conspirators, but not as defendants, to use the economic power of the said Massachusetts Turnpike Authority, over which the said Callahan exercised executive control, to cause to be paid to the said Kelley, who was then the son-in-law of the said Callahan, large sums of money to which he was not entitled, by the following means: by causing the award of contracts by the said Massachusetts Turnpike Authority to the said Highway Traffic Engineers, Inc., to be conditioned upon the said Kelley being paid a salary by the said Highway Traffic Engineers, Inc., and by

[1] A codefendant, Highway Traffic Engineers, Inc., was also found guilty at the same trial. It has paid the fine of $5,000 imposed upon it and it does not appear to have any appeal or exceptions pending or to be involved in this report.

Denman Electronics Corp., and Highway Equipment Co., Inc., both Massachusetts corporations controlled by the said Copell and the said Connolly, for which the said Kelley was to do no work, and upon the said Kelley becoming the owner of one-half of the outstanding common stock of the said Highway Traffic Engineers, Inc., and one-third of the common stock of the said Denman Electronics Corp. and the said Highway Equipment Co., Inc.; by the request and acceptance by said Callahan of a promise to do an act beneficial to him under an agreement and with an understanding that the vote, opinion and judgment of the said Callahan would be given in a particular manner and on a particular side of a question, cause and proceeding, which was or might be by law brought before him in his official capacity, and as consideration for speech, work and services in connection therewith; and by means of stealing money of the value of more than $100 of the property of the said Massachusetts Turnpike Authority, said money then being in the custody and control of the First National Bank of Boston as trustee."

The questions reported to this court for decision are: "A. Whether the indictment upon which the defendants were convicted was sufficient in the absence of any evidence of larceny. Specifically: 1. Whether that portion of the indictment which charges a conspiracy to bribe in violation of Massachusetts General Laws, Chapter 268, § 8 charges a crime. . . . 2. Whether the language of the indictment charges a criminal or unlawful object or means under the common law or substantial harm to the general public or to an individual within the meaning of the text set forth in *Commonwealth* v. *Dyer*, 243 Mass. 472, 485, and *Commonwealth* v. *Bessette*, 351 Mass. 157, 162, the second *Bessette* case."

The meaning of the first or principal question reported, whether the indictment was sufficient in the absence of any evidence of larceny, is not entirely clear to us. The indictment does not charge the defendants with the crime of larceny. It charges that they entered into a conspiracy "to use the economic power of the . . . Massachusetts Turnpike

Authority to cause to be paid to the said Kelley, . . . large sums of money to which he was not entitled" by several means alleged in the indictment. One of the means alleged was by stealing money of the Massachusetts Turnpike Authority (Authority). It is not clear whether the question is directed to the sufficiency of the indictment or to the sufficiency of the evidence presented at the trial. The sufficiency of the indictment is to be determined by a reading of its language. It expressly includes the stealing of money of the Authority as one of several means of using the economic power of the Authority to cause Kelley to be paid money to which he was not entitled. It is an "elementary rule of criminal pleading" that "[w]here a crime can be committed in any one of several ways, an indictment properly charges its commission in all those ways, using the conjunction 'and' in joining them." *Commonwealth* v. *Dowe,* 315 Mass. 217, 219–220. The sufficiency of the indictment does not depend upon whether evidence of larceny is presented at the trial.

We are faced with a very limited record which makes it difficult to answer the question on the assumption that it was intended to relate to the sufficiency of the evidence. The record states that there was no evidence of larceny by the defendant,[2] but it does not state what evidence was presented. The defendant was not charged with larceny and the Commonwealth was not required to prove larceny. The reference to larceny from the Authority was included in the statement of the several means by which the defendants were to accomplish the object of the conspiracy. If the object of the conspiracy is an end which could be accomplished by any of the several means alleged, the Commonwealth was not required to prove all such means. It is sufficient if the evidence establishes any of the means alleged. *Commonwealth* v. *Albert,* 310 Mass. 811, 820. *Commonwealth* v. *Beal,* 314 Mass. 210, 224. *Commonwealth* v. *Dowe,* 315 Mass. 217, 220. The report does not state whether the evidence was sufficient to establish one of the several

---

[2] At the close of the trial the Commonwealth stipulated that no evidence of larceny by the defendant was introduced at the trial.

means other than larceny by which it is alleged the defendants were to accomplish the object of the conspiracy, but the only way in which we can give meaningful answers to the questions reported is by assuming that the evidence was sufficient for that purpose.

The second question reported, perhaps as subsidiary to the question already discussed above, is "1. Whether that portion of the indictment which charges a conspiracy to bribe in violation of Massachusetts General Laws, Chapter 268, S. 8 charges a crime." The indictment does not charge a conspiracy to bribe. It charges a conspiracy to use the economic power of the Authority to cause to be paid to Kelley sums of money to which he was not entitled. It further charges that this object was to be accomplished by several means. While it can be correctly stated that one of the several means described in the indictment was conduct which would violate G. L. c. 268, § 8, the language used could also be construed to include within the means the violation of either G. L. c. 268, § 9, or G. L. c. 271, § 39. Thus, the means as described in the indictment, would constitute crimes under G. L. c. 268, §§ 8 or 9, if William F. Callahan was then an executive officer of the Commonwealth; and they would constitute a crime under G. L. c. 271, § 39, if he was not then an executive officer of the Commonwealth. In either case the means for the accomplishment of the object of the conspiracy would be a criminal offence.

The third question reported, perhaps also as a subsidiary to the first one discussed above, is "2. Whether the language of the indictment charges a criminal or unlawful object or means under the common law or substantial harm to the general public or to an individual within the meaning of the test set forth in Commonwealth v. Dyer, 243 Mass. 472, 485,[3]

---

[3] "It is the consensus of opinion that conspiracy as a criminal offence is established when the object of the combination is either a crime, or if not a crime, is unlawful, or when the means contemplated are either criminal, or if not criminal, are illegal, provided that, where no crime is contemplated either as the end or the means, the illegal but non-criminal element involves prejudice to the general welfare or oppression of the individual of sufficient gravity to be injurious to the public interest."

and *Commonwealth* v. *Bessette,* 351 Mass. 157, 162 [4] . . . ."

1. The indictment obviously charges several unlawful and in fact criminal means including the crimes covered by G. L. c. 268, §§ 8 and 9, and c. 271, § 39; and also the additional means of larceny about which no evidence was introduced.

2. We also hold that the object of the conspiracy was illegal and involved great danger to the public interest. At all times material to this case Callahan was the chairman of the Authority. Statute 1952, c. 354, which created the Authority provided in § 3 that "The Authority is hereby constituted a public instrumentality, and the exercise by the Authority of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be the performance of an essential governmental function." The Authority is a public corporation. It has also sometimes been referred to as "a public instrumentality performing an essential governmental function" and as "an agency of State government." *Massachusetts Turnpike Authy* v. *Commonwealth,* 347 Mass. 524, 525, 527–528. *Gardner* v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 562. *Commonwealth* v. *Toomey,* 350 Mass. 345, 347. The Authority members are appointed, and one member designated as chairman, by the Governor. Thus Callahan was the chairman of an Authority which was an agency of State government performing an essential governmental function. It is immaterial for the present purpose whether or not Callahan as such chairman was "an executive officer of the Commonwealth" as alleged in the indictment. He held a position of public trust, with powers vested in him for the accomplishment of public purposes. If, as alleged in the indictment, he conspired to use the economic power of the Authority to cause persons and cor-

[4] "[T]he principles of criminal conspiracy have very limited application where there is no criminality shown either in the object of the alleged conspiracy or in the means by which it is to be accomplished. In cases where effort is made to apply the principles stated in the *Dyer* case . . . it must appear that the accomplishment of an unlawful (but not criminal) object by noncriminal means will have serious, injurious effect, of substantial magnitude, upon the public, the public interest, or some individual."

porations to pay to his son-in-law, Kelley, sums of money to which he was not entitled, as a condition precedent to such persons or corporations securing contracts from the Authority, that would be "the prostitution of a public trust, the betrayal of public interests, the debauchment of the public conscience." *State* v. *Duncan*, 153 Ind. 318, 320. It would be an offence against public justice even if the position which gave him the power to do such things did not technically constitute him a "legislative, executive, judicial, county or municipal officer" within the meaning of G. L. c. 268, § 8. The conduct described in the indictment's allegation of the means for the accomplishment of the object of the conspiracy is impermissible and legally indefensible in the transaction of public business. The alleged object of this conspiracy, the subversion for private profit of the power of public office, is as unlawful as the means alleged. These conclusions do not turn on whether or not the chairman of the Authority was a "legislative, executive, judicial, county or municipal officer" within the meaning of G. L. c. 268, § 8, or whether he was an "officer or agent of, or a person employed by, the commonwealth, or by a county, city, town or by any public institution" within the meaning of § 9. They turn rather on the fact that he was the chairman of an Authority which was an agency of the State government in carrying out an essentially governmental function. We need not, therefore, consider the distinctions which we were required to make in our decision in *Commonwealth* v. *Toomey*, 350 Mass. 345.

The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*