## TOWN OF MAYNARD *vs*. MASSACHUSETTS BAY TRANS-PORTATION AUTHORITY & another.[1]

Middlesex. December 6, 1983. — April 12, 1984.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Massachusetts Bay Transportation Authority. Maynard. Statute,* Revocation of acceptance.

The town of Maynard, acting pursuant to St. 1979, c. 151, § 14, as amended by St. 1980, c. 80, § 1, validly revoked its acceptance of St. 1966, c. 433, under which the town was deemed to be added to the Massachusetts Bay Transportation Authority. [655-657]

CIVIL ACTION commenced in the Superior Court Department on May 10, 1982.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Joan C. Stoddard,* Assistant Attorney General, for Treasurer and Receiver General.

*Robert J. Coughlin (Roy A. Bourgeois* with him) for the plaintiff.

O'CONNOR, J. This appeal requires us to interpret the provision of the so called "tax cap" legislation, St. 1979, c. 151, which allows a city or town to revoke its acceptance of an optional provision of a general law or special act. A judge of the Superior Court granted the town of Maynard's motion for summary judgment, holding that the town had validly rescinded its membership in the Massachusetts Bay Transportation Authority (MBTA) in accordance with St. 1979, c. 151, § 14. We granted the defendants' application for direct appellate review. We affirm.

---

[1] The Treasurer and Receiver General of the Commonwealth.

The MBTA is a "body politic and corporate and a political subdivision of the commonwealth" consisting of "[t]he territory within and the inhabitants of" seventy-eight municipalities of greater Boston and any other city or town contiguous to the area of the seventy-eight municipalities which has voted to join the MBTA. G. L. c. 161A, §§ 2, 16. On January 1, 1967, the town of Maynard (town) became a member of the MBTA by accepting the provisions of a special act, St. 1966, c. 433, "An Act providing for the submission to the voters of the town of Maynard at the biennial state election in the current year of the question of adding said town to the Massachusetts Bay Transportation Authority." In return for the town's joining the MBTA, the MBTA provided local bus service to the town. This local bus service was discontinued in 1976, and since that time the town has received no direct transportation service from the MBTA. Town residents have continued to receive benefits from the MBTA, however, through access to commuter rail, rapid rail, express bus, and Green Line trolley services in neighboring towns.

In any year in which the current expenses incurred by the MBTA exceed the total income received by it, the member cities and towns are called upon to pay the resulting "net cost of service" according to various statutory formulae. G. L. c. 161A, §§ 8-12. The town's share of these assessments has ranged from $3,410.20 in 1967, to $153,451.75 for operating expenses in 1980.

At the annual town meeting on May 26, 1981, the town voted to "rescind [the town's] acceptance and approval of Chapter 433 of the Acts of 1966," and to withdraw thereby from the MBTA. Following this vote, the town's counsel notified the MBTA of the town's withdrawal. The MBTA refused to recognize the validity of this action. On May 10, 1982, the town filed this complaint against the MBTA and the Treasurer and Receiver General of the Commonwealth (treasurer). The complaint sought a declaration that the town had validly withdrawn from the MBTA and an order enjoining the treasurer from levying any further MBTA assessments against the town, or withholding or offsetting, as a result of MBTA

assessments accruing after the town's withdrawal, any sums of State aid due the town. The treasurer challenged both of the grounds asserted by the town as authority for its withdrawal: the tax cap legislation revocation provision, St. 1979, c. 151, § 14, and the violation of the town's due process rights under the Federal and State Constitutions which allegedly occurred when the MBTA terminated direct transportation service to the town and when its assessments were increased, pursuant to a new legislative formula.

The Superior Court judge granted the town's motion for summary judgment, holding that St. 1979, c. 151, § 14, authorized the town's withdrawal from the MBTA. The judge did not reach the constitutional arguments. The treasurer was enjoined from levying any MBTA assessments against the town and ordered to return to the town, "or restore to its account, all sums withheld, offset or otherwise taken from the . . . Town as a result of its membership in the MBTA subsequent to the effective date of the Town's withdrawal."

Section 14 of St. 1979, c. 151, as amended by St. 1980, c. 80, § 1, states as follows: "Notwithstanding any general or special law to the contrary, until June thirtieth, nineteen hundred and eighty-one at any time after the expiration of three years from the date on which any optional provision of general law or special act has been accepted in any city or town, [the acceptance may be revoked according to certain procedures] . . . . Such revocation shall be subject to the following conditions: . . . (d) this section shall not apply to any action taken to establish a regional district, authority or other entity which involves another city, town, district or other governmental unit." The treasurer's sole challenge to the validity of the town's revocation of its vote to join the MBTA is that the exception in subsection (d) of St. 1979, c. 151, § 14, as amended by St. 1980, c. 80, § 1, prohibits the withdrawal. This argument is valid only if the town's decision to join the MBTA in 1967 constituted an "action taken to establish a regional district, authority or other entity." St. 1979, c. 151, § 14 (d). We think that it did not do so.

The MBTA was created by § 2 of G. L. c. 161A, inserted by St. 1964, c. 563, § 18. The MBTA is a distinct entity, "a body politic and corporate," made up of the "territory within and the inhabitants of" fourteen cities and towns, named in G. L. c. 161A, § 1, and an additional sixty-four cities and towns. G. L. c. 161A, § 2. The term "sixty-four cities and towns" is defined as sixty-four named municipalities "and such other municipalities as may be added in accordance with section sixteen or in accordance with any special act to the area constituting the [MBTA]." G. L. c. 161A, § 1. The MBTA is an ongoing entity. It is not dissolved and reconstituted, as is a partnership, every time the membership changes, as the treasurer suggests.

The town did not "establish" the MBTA when it voted to join it in 1967. Therefore, the exception to the right to revoke certain acceptances of optional provisions in St. 1979, c. 151, § 14 (*d*), is inapplicable. We note that this holding will not seriously disrupt or disable the MBTA because the town is the only municipality to have joined the MBTA since its creation in 1964. The sixty-four other cities and towns, and the "fourteen cities and towns," may not avail themselves of the revocation provision in St. 1979, c. 151, § 14. They were the original members of the MBTA by the legislative enactment of 1964. These remaining cities and towns can absorb the loss of the town's assessments. As the treasurer notes, the Legislature has provided elsewhere for alleviating their financial burden. See St. 1982, c. 335, §§ 5, 6; St. 1982, c. 191, § 2, Item 6005-0011; St. 1980, c. 580, § 12; St. 1979, c. 151, §§ 8A, 8B, as appearing in St. 1980, c. 581, § 13. Having decided that the town validly withdrew from the MBTA in accordance with St. 1979, c. 151, § 14, we do not reach the town's alternative ground for withdrawal, the due process claim.

*Judgment affirmed.*