418 378 Mass. 418

Department of Community Affairs *v.* Massachusetts State College Building Authority.

DEPARTMENT OF COMMUNITY AFFAIRS *vs.* MASSACHUSETTS
STATE COLLEGE BUILDING AUTHORITY.

Suffolk. March 7, 1979. — July 5, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Massachusetts State College Building Authority. Housing. Practice,
Civil,* Declaratory relief. *Jurisdiction,* Declaratory relief. *Statute,*
Construction, Special law, General law. *Constitutional Law,*
Obligation of contracts. *Words,* "Public agency," "Supervision,"
"Regulation."

An action by the Department of Community Affairs against the Mas-
sachusetts State College Building Authority seeking a declaration
of rights and an order requiring the defendant to honor the pro-
visions of G. L. c. 79A, §§ 1-15, the Relocation Assistance Act, was
sufficient to invoke the jurisdiction of this court under c. 231A, § 1,
even though the department's interest in the subject matter was
obscure, where the case presented an important public question
whose resolution would affect more persons than the parties to the
case and was primarily a matter of statutory interpretation not
dependent on the facts of the particular case. [422-424]
The Massachusetts State College Building Authority is a "public agen-
cy" within the meaning of G. L. c. 79A. [425-429]
The application of the provisions of G. L. c. 79A to activities of the
Massachusetts State College Building Authority does not violate
the autonomy clause of the authority's enabling act, St. 1963, c. 703,
§ 2. [429-433]
In an action by the Department of Community Affairs against the
Massachusetts State College Building Authority seeking to require
the defendant to honor the provisions of G. L. c. 79A, §§ 1-15, the
Relocation Assistance Act, there was no merit to the authority's
contention that making c. 79A applicable to its projects would im-
permissibly impair the contract between it and its bondholders.
[433-434]

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on July 15, 1977.
The case was reported by *Braucher,* J.

378 Mass. 418                                   419

Department of Community Affairs *v.* Massachusetts State College Building Authority.

*Jonathan Brant,* Assistant Attorney General, for the plaintiff.

*Herbert D. Friedman* for the defendant.

QUIRICO, J. This case, which is before us on reservation and report by a single justice, involves the interpretation of the scope of the Relocation Assistance Act, G. L. c. 79A, §§ 1-15 (the Act). See G. L. c. 211, § 6. The plaintiff Department of Community Affairs (Department) brought suit in the county court seeking a declaration of rights and an order in the nature of mandamus requiring the defendant Massachusetts State College Building Authority (Authority) to honor the provisions of the Act when acquiring land for the purpose of constructing college dormitories. See G. L. c. 214, § 2; G. L. c. 231A, § 1. We conclude that the Authority is subject to the provisions of the Act.

## I. STATUTORY BACKGROUND.

A. *The Authority.* Certain background is necessary for appreciation of the factual setting in which the present action arose. The Legislature created the Authority as a "body politic and corporate" in 1963. See St. 1963, c. 703, § 2. The Authority consists of nine members appointed by the Governor, "of whom three members shall be appointive members" of the board of trustees of State colleges (Trustees) established by G. L. c. 15, § 20A. St. 1968, c. 347, § 1. St. 1965, c. 572, § 47. St. 1963, c. 703, § 1(b). Although the Authority is technically within the Department of Education, it is not "subject to the supervision or regulation of the department of education or of any department, commission, board, bureau or agency of the commonwealth except to the extent and in the manner provided in" its enabling act. St. 1963, c. 703, § 2. The Legislature declared: "The Authority is hereby constituted a public instrumentality and the exercise by the Authority of the powers conferred by this act shall be deemed and held to be the performance of an essential governmental function." *Id.*

The Authority was "created for the general purposes of aiding and contributing to the performance of the educational and other purposes of a state college by providing dormitories, dining commons and other buildings and structures for ... use [by] a state college, its students, staff and their dependents ... [or] by a research foundation or other research organization the operation of which in conjunction with a state college is approved by the trustees." *Id.* § 3. To fulfil this purpose, the Authority may, "upon written request made by authority of the trustees," initiate and operate projects "designed primarily to provide facilities for the housing, feeding, medical care or extra-curricular use by students, staff and dependents or facilities for use by a research foundation or other research organization ...." *Id.*

Section 4 of the enabling act sets out the various powers of the Authority. Those having particular relevance to this action are these: to sue and be sued in its own name (*id.* § 4[*d*]), to borrow money to finance its projects and to issue and sell revenue bonds and notes therefor (*id.* § 4 [*g*]), and to acquire real property (*id.* § 4[*i*]).

Subject to an over-all debt limit of $55,000,000, the Authority may issue bonds to fund its projects or to refund its outstanding debt. St. 1970, c. 845, § 1. The interest on such bonds is free from taxation within the Commonwealth. St. 1963, c. 703, § 14. The Commonwealth may, but need not, pledge its faith and credit to guarantee their repayment. *Id.* §§ 10, 11. St. 1970, c. 845, § 2. Those notes and bonds of the Authority which do not bear such guarantee are payable only from revenues derived from fees for use of Authority projects or from sale of refunding obligations. St. 1963, c. 703, §§ 7, 9, 11. In addition, "[w]hile any bonds or notes issued by the Authority remain outstanding, the powers, duties or existence of the Authority shall not be diminished or impaired in any way that will affect adversely the interests and rights of the holders thereof." *Id.* § 7.

378 Mass. 418                                                421

Department of Community Affairs v. Massachusetts State College Building Authority.

Finally, the Legislature provided that "[a]ll other general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this act." *Id.* § 24.

B. *The Department.* Through its bureau of relocation, the Department is charged with the administration of the Act. G. L. c. 79A, §§ 2, 4, 5, 8, 9, 10, 12. The key provision of the Act is found in § 3: "Any public agency, or any person authorized to take by eminent domain, including corporations established under the provisions of [G. L. c. 121A, concerning urban redevelopment], shall provide relocation assistance and payments under this act upon undertaking a project which results in displacement of occupants by the acquisition of real property or by the issuing of a written order to vacate for purposes of rehabilitation, demolition, or other improvement." *Id.* § 3, as appearing in St. 1973, c. 863, § 3. The payments required by the Act include, in substance, the cost of moving and, in some cases, the excess cost of procuring substitute housing. *Id.* § 7. The relocation advisory agency associated with a displacing agency must also assist displaced persons in locating substitute accommodations and in obtaining payments. *Id.* § 6. Finally, when the occupants of six or more dwelling or business units will be displaced by a project, the displacing agency must submit a relocation plan for approval by the Department. *Id.* §§ 4, 8. Except in emergency situations, the project may not proceed until such a plan is filed and approved and unless such approval remains effective. *Id.* §§ 9, 10.

## II. FACTS.

The facts are agreed and simply stated. The Trustees requested the Authority to construct dormitories at Fitchburg State College and at certain other locations. On December 7, 1976, the Authority authorized issuance of notes to fund these projects. During 1976 and 1977, the Authority (acting through an agent) purchased eleven

residential structures in Fitchburg by negotiated sale. It proposed to demolish the existing structures and to erect dormitories on the acquired land.

The eleven structures contained a total of sixteen dwelling units. On the dates of the various purchase and sale agreements, six units were owner-occupied, three were vacant, and seven were occupied by tenants. On the actual closing dates, six units were owner-occupied, seven were vacant, and three were occupied by tenants. No written notices to vacate were sent.

The Authority did not file a relocation plan, and it neither offered to provide nor provided relocation assistance to any persons displaced by the Fitchburg project. By letter dated February 7, 1977, an official of the Department stated his belief that the Authority had violated the pertinent provisions of c. 79A and requested that all acquisition activities should cease until there was compliance. By letter dated February 18, 1977, counsel for the Authority stated his opinion that c. 79A was inapplicable to the Authority's activities. That difference of opinion persists and forms the basis for this lawsuit.

### III. JURISDICTION.

Although neither party has raised the question, we first consider whether this court has subject matter jurisdiction over this case. See *Haas* v. *Breton*, 377 Mass. 591, 593 (1979); *Massachusetts Home Morgage Fin. Agency* v. *New England Merchants Nat'l Bank*, 376 Mass. 669, 676-677 (1978); *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639, 645 (1974). Our power to render declaratory and other relief is limited to cases "in which an actual controversy has arisen . . . ." G. L. c. 231A, § 1. *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977). *Boston* v. *Massachusetts Port Auth., supra* at 645 n.8. A mere difference of opinion or uncertainty over the meaning to be ascribed a statute does not, without more, rise to the level of a justiciable controversy. See *Commissioner of the*

378 Mass. 418                                          423

Department of Community Affairs *v.* Massachusetts State College Building Authority.

*Dep't of Community Affairs* v. *Medford Hous. Auth.*, 363
Mass. 826, 832-835 (1973); *Kelley* v. *Board of Registration
in Optometry*, 351 Mass. 187, 192 (1966). Rather, there
must be "a real dispute caused by the assertion by one
party of a legal relation, status or right in which he has
a definite interest, and the denial of such assertion by
another party also having a definite interest in the sub-
ject matter, where the circumstances attending the dis-
pute plainly indicate that unless the matter is adjusted
such antagonistic claims will almost immediately and
inevitably lead to litigation." *School Comm. of Cambridge*
v. *Superintendent of Schools of Cambridge*, 320 Mass. 516,
518 (1946). Accord, *Travelers Ins. Co.* v. *Graye*, 358 Mass.
238, 240 (1970); *South Shore Nat'l Bank* v. *Board of Bank
Incorporation*, 351 Mass. 363, 368 (1966).

The Authority unquestionably has a "definite interest
in the subject matter," arising from the financial and
planning burden that will fall on it if we hold c. 79A
applicable to its activities. The interest of the Depart-
ment is, however, considerably more obscure. The De-
partment stands to gain no monetary reward if it wins,
and no claimant of relocation benefits (who would have
such a financial stake in the outcome) is before us. In-
deed, to the extent the Department prevails, it will be
required to devote additional funds and energy to the
enforcement of c. 79A as that law applies to the Authori-
ty. The only interests of the Department apparent to us
are in vindicating its own power and in helping those
claimants, thus far hypothetical and unidentified, who
may someday come forward in response to this and other
acquisitions by the Authority. The first of these interests,
it seems to us, is an essentially institutional one that
could be considered in a proceeding before the Governor
under G. L. c. 30, § 5.[1] Cf. *Answers of the Justices*, 364

[1] In its amended answer, the Authority stated that "it does not
recognize the applicability of the procedure set forth in G. L. c. 30, § 5
as a means for resolving the dispute . . . ." The Authority's recognition

Mass. 838, 841-847 (1973). The second of these interests would be adequately, if not better, represented by an actual claimant.

Notwithstanding these considerations, a majority of this court believes it appropriate to deal with the merits of the issues raised in this case. The case presents "an important public question whose resolution will affect more persons than the parties to the case . . . [and which] is primarily a matter of statutory interpretation, not dependent on the facts of the particular case." *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. 359, 372 (1978). We therefore proceed to the merits.


IV. THE MERITS.

The Department's position rests on the plain meaning of the provisions of G. L. c. 79A. Section 3 of that chapter provides in relevant part that "[a]ny public agency . . . shall provide relocation assistance and payments under this act upon undertaking a project which results in displacement of occupants by the acquisition of real property . . . ." G. L. c. 79A, § 3, as appearing in St. 1973, c. 863, § 3. The term "acquisition" is defined in the Act to mean "the taking of real property by eminent domain, negotiated sale, or other means, by or for any public agency, or by any person or agency authorized to take by eminent

or nonrecognition of the statutory mechanism there provided for resolving questions "between executive or administrative departments, or officers or boards thereof, as to their respective jurisdictions or powers . . ." is, of course, quite irrelevant to the question whether this court may, consistently with the doctrine of separation of powers, intervene in what may be an entirely internal dispute between governmental officers. The procedure set forth in § 5 would appear, at least, to be an effective way of dealing with the question presented to us in so far as the actual parties are concerned. Cf. St. 1968, c. 347, § 1 (Governor may remove members of Authority). Our willingness to entertain the present action does not, however, depend on the applicability or nonapplicability of § 5 but rather on the pragmatic ground that the same issues will inevitably arise in some future suit between a claimant and the Authority.

domain . . . ." *Id.* § 1. The term "public agency" is defined to mean "any department, agency, board, commission, authority, or other instrumentality of the commonwealth or of a political subdivision of the commonwealth; or of two or more subdivisions thereof." *Id.*

There appears to be no dispute that, if the Authority is a "public agency" for purposes of the Act, its purchases of land are "acquisitions" resulting in displacement of occupants. The parties differ, however, over the breadth of the definition of "public agency" and over the question whether, assuming the Act applies by its own terms, certain provisions of the Authority's enabling act preclude such application. In addition, the Authority advances the argument that making c. 79A applicable to its projects will impermissibly impair the contract between it and its bondholders. We address each of these contentions.

A. *The meaning of "public agency."* As a "body politic and corporate" existing technically within but administratively without the Department of Education, the Authority is a hybrid entity, possessing attributes both of a private corporation and of an executive agency of the Commonwealth. See *Opinion of the Justices,* 334 Mass. 721, 733-734 (1956) (considering similar status of the Massachusetts Port Authority). For purposes of construing the term "public agency" appearing in c. 79A, the Authority is more public than private. The Legislature stated that "[t]he Authority is hereby constituted a public instrumentality and the exercise by the Authority of the powers conferred by this act shall be deemed and held to be the performance of an essential governmental function." St. 1963, c. 703, § 2. The promotion of education is undoubtedly a public purpose. *Byfield* v. *Newton,* 247 Mass. 46, 53 (1923). Interest on obligations issued by the Authority is free from taxation within the Commonwealth. St. 1963, c. 703, § 14. The Commonwealth may pledge its faith and credit to secure the repayment of such obligations. *Id.* § 10, as amended by St. 1970, c. 845, § 2. Finally, the language of c. 79A itself refers to "authori-

t[ies]" and "instrumentalit[ies]" of the Commonwealth, G. L. c. 79A, § 1, and the Legislature created the Authority as an "instrumentality." St. 1963, c. 703, § 2. All of these factors plainly demonstrate the public character of the Authority and require it to be included within the definition of "public agency." See *Wolfe* v. *Massachusetts Port Auth.*, 366 Mass. 417, 420-421 (1974); *Commonwealth* v. *Kelley*, 358 Mass. 43, 48-49 (1970); *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 527-528 (1964); *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 763-764 (1962).

The Authority makes the following complex argument to avoid being included within the literal scope of the term "public agency." Prior to 1973, c. 79A applied only to "a taking of real property by eminent domain or through purchase by an agency, public or private, authorized to take land by eminent domain, for a purpose for which such real property might have been taken by eminent domain." St. 1965, c. 790, § 4, § 1 (prior version of c. 79A, repealed 1973). Although the Legislature modified the Act in 1973 to bring the negotiated purchases by agencies lacking the power of eminent domain within the purview of the Act, it did so merely "to authorize the immediate increase in state relocation benefits in conformance with the federal Uniform Relocation Act," 42 U.S.C. §§ 4601-4638 (1976). St. 1973, c. 863, Preamble. The Federal act, in turn, has been construed only "to benefit those displaced by public agencies with coercive acquisition power, such as eminent domain." *Moorer* v. *HUD*, 561 F.2d 175, 182 (8th Cir. 1977), cert. denied, 436 U.S. 919 (1978). Therefore, because the Authority lacks "coercive acquisition power," it is not subject to the Act even as amended.

We are not persuaded by the Authority's argument. The Authority asks us, in effect, to assume from tenuous, extrinsic indications (a crucial one of which arose after the amendment in question) that the Legislature did not mean what it plainly said in redefining the scope of the Act. We decline to do so.

378 Mass. 418                    427

Department of Community Affairs *v.* Massachusetts State College Building Authority.

The judicial task in construing a statute was concisely stated by Chief Justice Rugg in these words: "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Accord, e.g., *Massachusetts Comm'n Against Discrimination* v. *Liberty Mutual Ins. Co.*, 371 Mass. 186, 190 (1976). "The scope of the authority of this court to interpret and apply statutes is limited by its constitutional role as a judicial, rather than a legislative, body." *Rosenbloom* v. *Kokofsky*, 373 Mass. 778, 780 (1977). Reliance on extrinsic aids may be appropriate when the legislative provision is unclear or ambiguous, or when a literal construction would yield an absurd or unworkable result. *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 126 (1978). *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 690-691 (1973). *Commissioner of Corps. & Taxation* v. *Boston Ins. Co.*, 328 Mass. 641, 646 (1952). A court cannot, however, resort to extrinsic sources to vary the plain meaning of a clear, unambiguous statute. *Burke* v. *Chief of Police of Newton*, 374 Mass. 450, 452 (1978). *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977). *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). *Chouinard, petitioner*, 358 Mass. 780, 782 (1971). Because we find the language in c. 79A clear and unambiguous, we decline the Authority's invitation to examine interpretations of the analogous Federal enactment. See also *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167 (1978).

Even apart from the impropriety of ignoring the plain language of c. 79A, we find the Authority's argument unpersuasive. The case of *Moorer* v. *HUD, supra,* on

which the Authority relies, held only that a private rehabilitation sponsor, who was to receive Federal financial assistance in the form of mortgage insurance and of interest and rent subsidies, was neither a Federal nor a State agency as those terms are defined in 42 U.S.C. § 4601(1),(3) (1976), and was therefore not required to make relocation assistance payments under *id.* §§ 4621-4638. See 561 F.2d at 178-179, 182-183. The court's reference to "coercive acquisition power" (*id.* at 182) is best understood as defining a test for determining when an essentially private entity should be regarded as so closely associated with a State that it should provide relocation benefits. Indeed, as the court itself noted (*id.* at 180 n.6), there is legislative history suggesting that Congress intended truly public agencies to provide assistance whether an acquisition was coercive or not. See H.R. Rep. No. 1656, 91st Cong., 2d Sess., reprinted in [1970] U.S. Code Cong. & Ad. News 5850, 5853-5854. Chapter 79A in fact embodies such a test. See G. L. c. 79A, § 1 ("acquisition" includes takings by "public agenc[ies]" and by entities having power of eminent domain). Because the Authority is a "public agency" within the meaning of c. 79A and the sponsor involved in the *Moorer* case was not, we find that case clearly distinguishable.

We point out in addition that there is no unfairness in holding c. 79A applicable to the Authority even though the Authority lacks the power of eminent domain. The Legislature's primary motive in providing relocation assistance to a property owner who is forced to sell or whose property is taken from him is probably the realization that merely paying him for his real estate does not fully compensate him, even if he is paid an amount sufficient to purchase comparable new premises. In relocating, he must incur expenses not recoverable under the measure of damages provided by G. L. c. 79, § 12, apart from consideration of the factor of Federal reimbursement. By enacting G. L. c. 79A, the Legislature has decided, as a matter of public policy, that a person incurring relocation

378 Mass. 418                                              429

Department of Community Affairs *v.* Massachusetts State College Building Authority.

expenses when displaced for the construction of a program or project undertaken by a public agency ought to be compensated therefor. A tenant whose landlord sells his property to a public agency for such a program or project is in no different stead. When a public entity acquires private property for a public purpose, that property is withdrawn from the possibility of continued private occupancy. Associated with this change in use of the particular premises there may be other factors which may increase the impact on the displaced occupants — for example, a scarcity of housing or business premises or of open space. The burden of relocation on dislocated tenants is equally heavy whether the public agency acquires the rented premises by eminent domain or by purchase.

For all of these reasons, we conclude that the plain meaning of c. 79A should control, and we hold that the Authority is a "public agency" within the meaning of that law.

B. *Conflict with the enabling act.* The Authority also argues that making c. 79A applicable to its activities would violate the autonomy clause of its enabling act by making it "subject to the supervision or regulation . . . of any department, commission, board, bureau or agency of the commonwealth . . . ." St. 1963, c. 703, § 2. We disagree.

The alleged supervision or regulation takes several forms. Initially, the Department must qualify a relocation advisory agency before any acquisition displacing occupants may proceed. G. L. c. 79A, § 2. The Department must also approve every relocation plan (when one is required) and every substantial change thereto. *Id.* §§ 4, 8. It may suspend its approval of a relocation plan and thereby halt further displacement of persons and businesses. *Id.* § 9. The Department is authorized to promulgate regulations governing, inter alia, determinations of amounts to be paid for relocation. *Id.* §§ 7, 12. Finally, it is the tribunal of last resort for persons claiming a right to payments under the Act. *Id.* § 7.

The Department's activities, summarized above, cannot be termed "supervision" in any ordinary sense. The verb "to supervise" was judicially defined by this court in *Fluet* v. *McCabe*, 299 Mass. 173, 179 (1938), to mean "to oversee, to have oversight of, to superintend the execution of or performance of (a thing), or the movements or work of (a person); to inspect with authority; to inspect and direct the work of others." See also Webster's New Int'l Dictionary 2533 (2d ed. 1959). The Department has no power over the decision to acquire land, over the situs of land to be acquired, over the use to be made of land once acquired, over the financing of projects, or over the construction and operation of projects. Rather, its power is limited to ensuring that, as an incident to acquiring land, the Authority complies with c. 79A. In performing this function, the Department merely implements an evident legislative decision that one centralized entity should bear over-all responsibility for relocation benefits, to the end that all displaced persons should be treated equally. Whatever else this function may be, it is not "supervision."

The Authority nonetheless argues that subjecting it to c. 79A will allow the Department to encroach on unspecified "management prerogatives" and will inhibit the businesslike performance of its designated task. There is, however, no prerogative to violate the law. Moreover, any inhibition will stem, not from meddling by the Department in the Authority's affairs, but rather from the legislative decision that the Authority and other public agencies should provide relocation assistance according to a definite, uniformly administered scheme.

The question whether the Department would be performing impermissible "regulation" of the Authority appears somewhat closer. The case of *Boston* v. *Massachusetts Port Auth.*, 364 Mass. 639 (1974), presented the analogous question whether the Massachusetts Port Authority (MPA) was subject to air pollution control regulations promulgated pursuant to G. L. c. 111, § 142B. *Id.* at

653-658. Like the Authority involved in the present case, the MPA was declared by its enabling act to be free from "the supervision or regulation ... of any department, commission, board, bureau or agency of the commonwealth except to the extent and in the manner provided in" its enabling act. St. 1956, c. 465, § 2. We nevertheless held the MPA subject to pollution regulations established by the Department of Public Health. 364 Mass. at 658. We advanced two reasons for so holding. First, the effect of a contrary conclusion "would be that a small group of State authorities would have a unique exemption from the regulatory power of the State, an exemption available to no other person or legal entity, public or private." *Id.* at 654-655. In addition, we noted that "[t]he extent of this exemption would be such that no legislation authorizing State regulation of any activity or subject, regardless of the breadth of its language and the generality of its application, would supersede such exemption except by express reference to and amendment of the enabling act of each such authority." *Id.* at 655.

The Act evidently lacks the universal scope of the pollution laws considered in the *MPA* case. Without expressing any opinion on the correctness thereof, we may note several propositions advanced by the Authority as indicative of this nonuniversality: (1) no one who moves before acquisition qualifies for payments under the Act (G. L. c. 79A, § 1 [defining "displaced person"]), (2) owner-occupants who sell by negotiated sale without threat of a taking by eminent domain are also ineligible, (3) no relocation plan need be filed if the occupants of fewer than six units will be displaced (G. L. c. 79A, § 4, Second), and (4) private entities lacking the power of eminent domain are not subject to the Act (*id.* § 1 [defining "acquisition"]).

That the Act may not apply fully or equally to every conceivable claimant or project is, we think, quite beside the point. Some legislative and administrative line-drawing is inevitable in fashioning a compensation scheme like this one. Cf. G. L. c. 111, §§ 142H, 142I (authorizing

certain ceremonial bonfires notwithstanding pollution control laws). In any event, the evil avoided by our opinion in the *MPA* case was the anomalous creation of an implied exemption from a comprehensive regulatory scheme that in terms did, and in reason ought to, apply to the activities of a semiautonomous State instrumentality. Cf. *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, 336-341 (1975). That principle has obvious utility in this case for the basic reasons advanced in part IV. A. of this opinion. Chapter 79A is a comprehensive scheme for relocation assistance that in terms does, and in reason ought to, apply to the activities of the Authority.

The second prong of our *MPA* analysis also has great relevance in this case. The Legislature cannot reasonably be expected to amend every general or special law creating a semiautonomous authority whenever it enacts legislation obviously aimed at all such authorities. The almost insurmountable problems in indexing for special laws may be one pragmatic reason why such an expectation is unwarranted. Arguments premised on the literal scope of a clause like the one here under consideration, which is claimed to confer autonomy, are unrealistic. Similarly, the provision in the Authority's enabling act that "[a]ll other general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this act" (St. 1963, c. 703, § 24) has no talismanic import. The question in a case of this kind is one of reason and not one of semantics. The action of the Legislature in enacting St. 1963, c. 703, and the several amendments thereto cannot be construed as precluding any further legislative action concerning or affecting the Authority.

We hold, consistently with our decision in the *MPA* case, that the incidental regulation of Authority activities performed by the Department under c. 79A does not violate the autonomy clause of the Authority's enabling act. We also hold that the Department engages in no impermissible "supervision" of the Authority. There is,

378 Mass. 418                                    433

Department of Community Affairs *v.* Massachusetts State College Building Authority.

therefore, no inconsistency between the enabling act and c. 79A.

c. *Impairment of contract.* Finally, the Authority argues that imposing on it the burden of providing relocation assistance and payments will impair the contract between it and its bondholders. The primary focus of the Authority's argument is on the last paragraph of St. 1963, c. 703, § 7, which provides: "While any bonds or notes issued by the Authority remain outstanding, the powers, duties or existence of the Authority shall not be diminished or impaired in any way that will affect adversely the interests and rights of the holders thereof." The Authority also argues in somewhat abbreviated terms that the Contracts Clause of the United States Constitution, art. I, § 10, cl. 1, is implicated in this case.

On the factual record before us, we find the Authority's contentions without merit.[2] The financial structure of the Authority is such that no person who purchased a bond issued for a pre-1973 project could possibly be affected by the 1973 amendments to c. 79A: revenues from each Authority project are earmarked for retirement of the debt incurred to finance that specific project, and no other Authority funds (except those derived from refunding obligations) can be so used. St. 1963, c. 703, §§ 7, 9. Chapter 79A is applicable to the Authority only by reason of amendments enacted on October 4, 1973. Authorization for the bonds to finance, inter alia, the Fitchburg project was not, however, given until December 7, 1976. Thus, no purchaser of these bonds could reasonably have relied on the absence of an obligation to provide relocation assistance. See *United States Trust Co.* v. *New Jersey,* 431 U.S. 1, 18 n.15 (1977). Were this not enough to preclude consti-

---

[2] We perceive a significant question, unaddressed by the parties, whether the Authority has standing to assert the rights of its bondholders in the first place. See *Town Taxi Inc.* v. *Police Comm'r of Boston,* 377 Mass. 576, 581 (1979), and cases cited. We think, however, that the answers to the Authority's contentions are so clear as to deserve statement here.

tutional argument, the bonds issued to finance the Fitchburg project were to be guaranteed by the Commonwealth pursuant to the optional provisions of St. 1963, c. 703, § 10, as amended through St. 1970, c. 845, § 2. We therefore fail to see how debt service might be impaired by making the Authority pay relocation benefits to persons displaced by the Fitchburg project. The statutory provision quoted above, of course, would not be violated because any diminution or impairment of the Authority's "powers, duties or existence" (assuming that any occurred) happened in 1973, long before the bonds were issued.

## V. CONCLUSION.

We hold that the Authority is subject to the requirements of G. L. c. 79A. The case will be remanded to the county court for a declaration so providing. Because we assume that the Authority will honor such declaration, we see no need for an order specifically directing the Authority to comply with c. 79A in the future. On remand, the single justice should consider whether there is any present necessity to order the Authority to file a relocation plan in connection with the Fitchburg project. The single justice is, of course, free to transfer the case to the Superior Court for consideration of that question. G. L. c. 211, § 4A. Finally, because no potential claimants of relocation benefits on account of the Fitchburg project are parties to this action, no order need issue requiring the Authority to provide relocation assistance to any particular persons.

*So ordered.*