MAX R. KARGMAN & others *vs*. BOSTON WATER AND
SEWER COMMISSION.

Suffolk. December 16, 1983. — April 25, 1984.

Present: DREBEN, HALE, & KASS, JJ.

*Massachusetts Tort Claims Act. Boston Water and Sewer Commission.
Words,* "Independent body politic and corporate."

The Boston Water and Sewer Commission is an "independent body politic"
within the meaning of § 1 of G. L. c. 258, the Massachusetts Tort
Claims Act, and thus is not a "public employer" for purposes of the
Act. [54-59]

CIVIL ACTION commenced in the Superior Court Department
on March 16, 1979.

The case was heard by *Young,* J., on a motion for judgment
on the pleadings.

*Edward Rabinovitz (Roger B. Sherman* with him) for the
plaintiffs.

*Laura Steinberg (Barbara J. Levine* with her) for the defend-
ant.

HALE, J. This case presents the issue whether the Boston
Water and Sewer Commission (commission) is a "public em-
ployer" as that term is defined in the Massachusetts Tort Claims
Act (the Act), G. L. c. 258, as appearing in St. 1978, c. 512, § 15.

The plaintiffs filed a complaint in March, 1979, against the
city of Boston, alleging that in July of 1978 damage had been
caused negligently to the plaintiffs' Tremont Street apartment
complex by water flooding from broken pipes which were
under the control of the city. In April, 1979, the plaintiffs
amended the complaint to add the commission as a party.
Neither the complaint nor its amended version alleged that the
plaintiffs had performed all conditions precedent to recovery
under G. L. c. 258. In October, 1982, the commission moved
for judgment on the pleadings or, alternatively, for summary

judgment in its favor, on the ground that the plaintiffs had failed to comply with § 4 of the Act.[1] The Superior Court allowed the motion and entered judgment on the pleadings for the commission.[2] In doing so, the Superior Court ruled that the commission is a "public employer" as defined in § 1 of G. L. c. 258, and that claims against it must be brought in accordance with the Act, despite a proviso in the same section excluding as a public employer an "independent body politic and corporate." We are of opinion, however, that the commission falls into this latter class and therefore presentment under § 4 of the Act was not required. Accordingly, we reverse the judgment.

I. STATUTORY BACKGROUND.

A. *The commission.* We summarize the statutory background to the extent necessary for this decision. In the Boston Water and Sewer Reorganization Act of 1977, St. 1977, c. 436, effective July 18, 1977, the Legislature created the commission as a "body politic and corporate and political subdivision of the commonwealth." The powers of the commission are exercised by a board of three members appointed by the mayor of Boston for staggered four-year terms. *Id.* at § 3. Although members may be removed by the mayor for cause, the commission is not, except as otherwise expressly provided, subject to the supervision of any department, commission, board, bureau, or agency of the city. *Ibid.* The Legislature declared in § 3: "The commission is hereby constituted a public instrumentality and the exercise by the commission of the powers conferred by this act shall be deemed and held to be the performance of an essential public function." *Ibid.*

---

[1] General Laws c. 258, § 4, as appearing in St. 1978, c. 512, § 15, reads in pertinent part: "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . . ." See also *Weaver* v. *Commonwealth,* 387 Mass. 43 (1982); *Vasys* v. *Metropolitan Dist. Commn.,* 387 Mass. 51 (1982).

[2] Judgment was entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), thus making the action immediately appealable.

The commission was created "for the benefit of the people of the city of Boston" to improve and maintain "a sound, economical and efficient water supply and distribution system and sanitary sewerage system." *Id.* at § 1. Among other things, it was declared to be "essential that the water and sewerage systems of the city be operated in a modern, efficient and financially self-sustaining manner," and that "fees, rates and charges . . . be established on just and equitable standards." *Ibid.*

To fulfill these purposes, the enabling act sets forth various powers of the commission, which include the powers: to sue and be sued in its own name; to borrow money and incur indebtedness to finance its projects; to have legal title to real and personal property; to fix and collect fees and charges which are "not . . . subject to supervision or regulation by . . . the commonwealth or any of its political subdivisions or the city of Boston" (*id.* at § 7[b]); to make contracts, and to do all things necessary to carry out the purposes of the commission or the powers granted to it. During a start-up period (prior to December 31, 1979), and subject to an aggregate principal amount limit of $50,000,000 outstanding at any one time, the commission was authorized to issue notes in anticipation of bonds which, upon application of the commission, were to be guaranteed by the city of Boston. Such notes and any renewal thereof were to mature no later than December 31, 1979. *Id.* at § 8. In addition, the commission may at any time issue bonds to pay or refund the notes and for any of its corporate purposes. These bonds may be either general obligations or special obligations payable solely from particular funds. *Id.* at § 9. Unlike the guaranteed notes, the bonds are not deemed to be a debt or a pledge of the faith and credit of the Commonwealth or any political subdivision thereof; bonds are payable solely from the revenues of the commission. *Id.* at § 12. The bonds may be secured by trust agreement, and the bonds and their income are not subject to taxation by the Commonwealth. Finally, several sections insure the independence of the commission and the integrity of the bonds. See *id.* at §§ 13, 19, 20, 21, 22.

B. *Massachusetts Tort Claims Act.* Section 2 of the Act makes "public employers" liable for losses caused by the negligence of public employees acting within the scope of their employment. Section 1 defines a "public employer" as "the commonwealth and any county, city, town or district . . . and any . . . commission . . . thereof which exercises direction and control over the public employee, *but not* a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or *any other independent body politic and corporate*" (emphasis supplied).[3]

II. INTERPRETATION.

A. *Body politic and corporate.* Although the parties concede the commission is a body politic and corporate, we think it necessary to discuss the term as background for our decision. The ancestry of the concept "body politic and corporate" may be traced back to the Preamble to the Massachusetts Constitution wherein the following statement appears: "The body politic is formed by a voluntary association of individuals: it is a social compact, by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good." The provisions of the Constitution failed to establish the legal status of about two hundred towns which had previously comprised the Province of The Massachusetts Bay. But in 1786 the Legislature formally confirmed the boundary lines of each town, and

---

[3] In full, G. L. c. 258, § 1, as amended through St. 1981, c. 403, defines public employers as: ". . . the commonwealth and any county, city, town or district, including any public health district or joint district or regional health district or regional health board established pursuant to the provisions of section twenty-seven A or twenty-seven B of chapter one hundred and eleven, and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or any other independent body politic and corporate. With respect to public employees of a school committee of a city or town, the public employer for the purposes of this chapter shall be deemed to be said respective city or town."

declared "the inhabitants of every town within this Government are hereby declared to be a body politick and corporate." St. 1785, c. 75, § 8 (enacted in March, 1786). See Randall and Franklin, Municipal Law § 1 (1982). This conjunctive usage stuck, and it is commonplace to find in Massachusetts town charters language that the inhabitants of the town "shall continue to be a body corporate and politic." See, e.g., *id.*, appendix C at 131.

Later, the concept found a new use beyond describing traditional municipal corporations. The terminology "body politic and corporate" is frequently used by the Legislature when it creates a legal entity to perform specified tasks deemed to be essential public functions. Such entities are "hybrid," possessing attributes of both private corporations and governmental agencies. *Department of Community Affairs* v. *Massachusetts State College Building Authy.,* 378 Mass. 418, 425 (1979). See *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, 585 (1912). On the one hand, such a public corporation "must constitute an entity in itself and must have an existence apart and distinct from that of the Commonwealth," while, on the other hand, it "bears considerable analogy to a municipal corporation." *Opinion of the Justices,* 334 Mass. 721, 733-734 (1956) (considering status of Massachusetts Port Authority). Absent plain statutory direction, it devolves on the courts to decide on a case by case basis whether a particular body politic and corporate should be treated as "more public than private." *Massachusetts State College Building Authority, supra* at 425.[4]

---

[4] See, e.g., cases emphasizing the private or corporate nature: *Johnson-Foster Co.* v. *D'Amore Constr. Co.,* 314 Mass. 416, 419 (1943) (housing authority and G. L. c. 149, § 29); *Commonwealth v. Toomey,* 350 Mass. 345, 347-350 (1966) (Massachusetts Turnpike Authority and G. L. c. 268, § 10). See also *Kennelly* v. *Kent County Water Authy.,* 79 R.I. 376, 380-382 (1952). For cases emphasizing public nature, see: *Higginson,* 212 Mass. at 585-587; *Finance Commn. of Boston* v. *McGrath,* 343 Mass. 754, 763-764 (1962); *Gardner* v. *Massachusetts Turnpike Authy.,* 347 Mass. 552, 556 (1964); *Massachusetts Turnpike Authy.* v. *Commonwealth,* 347 Mass. 524, 527 (1964); *Massachusetts State College Building Authority,* 378 Mass. at 425-428.

B. *Independent body politic and corporate.* The phrase in G. L. c. 258, § 1, excluding from the definition of a public employer "any *other* independent body politic and corporate" (emphasis supplied), must, by reason of its position in the statute, have been intended by the Legislature to be read in connection with the preceding list of entities expressly exempted from the Act. We therefore point out several relevant characteristics which make those specifically named public corporations more "independent" than other bodies politic and corporate.[5]

First, the enabling acts of the expressly exempted entities establish them as financially independent from the Commonwealth and its various political subdivisions. Each authority has power to fix, charge, and collect revenues from projects under its control, and in doing so none of the authorities is subject to regulation by the Commonwealth. See G. L. c. 161A, §§ 3, 5 (Massachusetts Bay Transportation Authority) (MBTA); St. 1956, c. 465, §§ 3, 14 (Massachusetts Port Authority) (Port); St. 1952, c. 354, §§ 5, 10 (Massachusetts Turnpike Authority) (Turnpike). All three have power to issue bonds without obtaining any consent from the Commonwealth. The Port and Turnpike may issue bonds payable solely out of revenues, while, under more limited situations, the MBTA may do the same. See G. L. c. 161A, §§ 3, 4(*b*), 23 (MBTA); St. 1956, c. 465, §§ 3, 8, 11 (Port); St. 1952, c. 354, §§ 5, 8 (Turnpike). In the cases of the Port and the Turnpike, the bonds

---

[5] Contrary to arguments made to this court, we do not view the words of the statute as clear and unambiguous. As the parties' competing definitions indicate, the word "independent" as used in § 1 of the Act is undefined. The plaintiffs contend the plain meaning of the provision is that § 1 exempts bodies politic and corporate which "derive substantial revenue by direct sales to the ultimate consumer," "as opposed to appropriations from taxes." We are also told that the Legislature intended to exempt only those entities deemed to be bodies "politic and corporate" in their enabling legislation. The defendant suggests an entity is independent if prior to enactment of the Act statutes provided it could be sued in tort. None of these definitions follows inevitably from the language of § 1. We therefore resort to the legislative context in order properly to interpret this provision. See *Hashimi* v. *Kalil*, 388 Mass. 607, 610 (1983).

are to be secured by trust agreement, and the agreement may pledge or assign project revenues. The bonds are not to be deemed a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth. All moneys received by the Port and Turnpike are trust funds, to be held and applied solely as provided in the enabling acts. In addition, all expenses incurred in carrying out the provisions of the enabling acts are payable solely from the proceeds from the sale of bonds or from project revenues. See St. 1956, c. 465, §§ 11, 12, 15 (Port); St. 1952, c. 354, §§ 2, 9, 11 (Turnpike). The MBTA, while less independent due to an anticipation of operational deficits requiring assessments from several cities and towns comprising the MBTA's territory, also exists as a distinct financial entity. Through fare collection, issuance of bonds and notes, provisions for assessment of cities and towns, and contract and Federal assistance, the MBTA operates as a mixed, but essentially independent, financial body.[6] See G. L. c. 161A, §§ 2-4, 8-11, 12, 12A, 23, 28, 29.

Second, the enabling acts of these expressly exempted entities, in addition to creating separate corporate existence,[7] afford considerable political independence to the respective governing bodies. See G. L. c. 161A, §§ 3(f)(i), 5, 6, & 7, and *Boston* v. *Massachusetts Bay Transp. Authy.,* 373 Mass. 819 (1977) (MBTA); St. 1956, c. 465, §§ 2, 14, 17, and *Opinion of the Justices,* 334 Mass. 721, 733 (1956) (Port);

---

[6] For other bodies politic and corporate, compare G. L. c. 121B, (housing authorities); St. 1958, c. 606 (Massachusetts Parking Authority); St. 1963, c. 703 (Massachusetts State College Building Authority); St. 1966, c. 708, as amended (Massachusetts Housing Finance Agency); St. 1975, c. 212 (government land bank); St. 1982, c. 190 (Massachusetts Convention Center Authority). Contrast G. L. c. 71, § 16 (regional school districts).

[7] With respect to separate corporate existence, each of the entities expressly exempted from the definition of public employer in G. L. c. 258, § 1, is empowered to: sue and be sued in its own name; acquire, hold, and dispose of real and personal property; make contracts; engage employees and agents and fix their compensation; exercise the power of eminent domain; and exercise such other powers as are necessary to carry out the purposes of the particular authority. See G. L. c. 161A, §§ 2, 3 (MBTA); St. 1956, c. 465, §§ 2, 3, 4 (Port); St. 1952, c. 354, §§ 3, 5, 7 (Turnpike). The defendant commission possesses similar corporate powers.

St. 1952, c. 354, §§ 3, 10, 13 (Turnpike). See also *Maynard v. Massachusetts Bay Transp. Authy.*, 391 Mass. 654, 657 (1984). It thus appears that the exempted authorities have comparable indicia of independence to those possessed by the defendant commission.

The Superior Court judge impliedly rejected these indicia, and in a well-crafted and thoughtful memorandum of decision observed another common characteristic: that each of the entities is subjected to *statutory* tort liability that predates the Act. We are not persuaded that the Legislature intended that this be a criterion to test whether a body politic and corporate is independent.[8] Instead, we are of opinion that by use of the

---

[8] The Superior Court judge took the seemingly restrictive view that a body politic and corporate is independent for purposes of the Act only if there exists some other express statutory provision that the entity could be held liable for its tortious conduct, and stated: "To hold otherwise is to go back into common law and again get bogged down in the involuted doctrines of immunity which the Supreme Judicial Court has branded as 'logically indefensible' in *Morash & Sons, [Inc.* v. *Commonwealth,* 363 Mass. 612, 618 (1973)]." At first blush, this construction of the provision appears to restrict tightly the class of entities exempt from the Act, and appears to be consonant with the Act's purpose of putting "governmental entities on the same footing as private tort defendants." *Gallant* v. *Worcester,* 383 Mass. 707, 714 (1981). However, the express statutory provisions relied upon by the judge would only make the Port and Turnpike liable for defects or want of repair in ways as if under G. L. c. 84, §§ 15, 18, 19. See St. 1956, c. 465, § 23 (Port); St. 1952, c. 354, § 15 (Turnpike). Statutory liability for defects or want of repair upon a way extends to every "county, city, town or person by law obligated to repair the same." G. L. c. 84, § 15, as amended by St. 1965, c. 214. Were we to hold that such statutory liability is sufficient to hoist an entity to independent status, every county, city or town, being bodies politic and corporate, would be exempt from G. L. c. 258. Thus, the argument proves too much, and by so holding we would fall far short of our duty to construe the provisions of G. L. c. 258 "liberally for the accomplishment of the purposes thereof." St. 1978, c. 512, § 18. *Vasys* v. *Metropolitan Dist. Commn.,* 387 Mass. 51, 57 (1982).

Our present disposition does not lead to the grossly disparate results criticized in *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. at 623, and *Whitney* v. *Worcester,* 373 Mass. 208, 213-220, 226 (1977). We need not decide whether, if a body politic and corporate is independent, it enjoys no governmental immunity and may be sued for its tortious conduct. If the entity is not excluded from the definition of public employer (G. L. c. 258, § 1), it may be sued for its tortious conduct but only in accordance with the Act. It may be that no third category exists and that the governmental

words "independent body politic and corporate" the Legislature intended to exempt a class of entities which, like the Port, Turnpike, and MBTA, exist as independent financial and political corporate bodies performing special public functions. This classification is not new. See 1 McQuillin, Municipal Corporations §§ 2.03b, 2.13, 2.29a (3d rev. ed. 1971).

After reviewing the enabling act of the commission, we hold that the commission is an "independent body politic and corporate" for purposes of G. L. c. 258, § 1. Since presentment under § 4 of the Act was not required, the judgment entered on that basis was error.

*Judgment reversed.*

immunity doctrine is replaced by the ordinary rule that if there is tortious injury there is liability.