**Roberta GIARDI, Plaintiff**

v.

**Annalisa DUNNING, and the Dioceses and/or Churches of the Domestic and Foreign Missionary Society, Defendants.**

**C.A. No. 07–10358–MLW.**

United States District Court, D. Massachusetts.

May 19, 2008.

Thomas F. Walsh, Yasi & Yasi, P.C., Green Salem, MA, for Plaintiff.

Corinne E. Casarino, James E. Harvey, O'Malley and Harvey, LLP, Christopher M. Jantzen, Jantzen & Associates PC, Floor Boston, MA, Peter J. Riordan, Jantzen & Associates 4 Liberty, Square Boston, MA, Defendants.

### MEMORANDUM AND ORDER

MARK L. WOLF, District Judge.

The court has received the attached Magistrate Judge's Report and Recommendation on the defendant Dioceses and/or Churches of the Domestic and Foreign Missionary Society's Motion for Partial Summary Judgment. There were no objections to the Report and Recommendation filed within the period provided by Federal Rule of Civil Procedure 72(b). The court finds the Magistrate Judge's Report and Recommendation to be thorough, thoughtful and persuasive.

Accordingly, it is hereby ORDERED that:

1. The attached Report and Recommendation (Docket No. 28) is ADOPTED by the court and INCORPORATED in this Memorandum pursuant to 28 U.S.C. § 636(b)(1).

2. For the reasons stated in the Report and Recommendation, the defendant Dioceses and/or Churches of the Domestic and Foreign Missionary Society's Motion for Partial Summary Judgment (Docket No. 21) is ALLOWED.

3. For the reasons stated in the Report and Recommendation, the liability of the defendant Dioceses and/or Churches of the Domestic and Foreign Missionary Society is hereby LIMITED to $20,000 pursuant to Massachusetts General Laws, chapter 231, section 85(K).

### REPORT AND RECOMMENDATION ON DEFENDANT DIOCESES AND/OR CHURCHES OF THE DOMESTIC AND FOREIGN MISSIONARY SOCIETY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 21)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

On February 23, 2007, plaintiff Roberta Giardi ("Giardi") filed a complaint (# 1) alleging that defendant Annalisa Dunning ("Dunning") operated a motor vehicle negligently thereby causing an accident which resulted in Giardi being injured. At the time of the accident, Giardi and Dunning were part of a church youth group traveling to Maine to shop at the outlet stores in Freeport. The plaintiff seeks to recover

damages from Dunning and a second defendant, the Dioceses and/or Churches of the Domestic and Foreign Missionary Society ("Church"), for physical injuries and mental anguish caused by the accident.

In due course on April 2 and 3, 2007, Dunning and the Church filed their respective answers to the complaint. (# 4, # 5) On November 27, 2007, the complaint was amended solely to change the name of the second defendant to the Dioceses and/or Churches of the Domestic and Foreign Missionary Society.[1] (# 17) Thereafter both defendants amended their answers. (# 18, # 19)

On February 27, 2008, the Church filed a motion for partial summary judgment together with a memorandum of law and exhibits (# 22) as well as a statement of material facts. (# 23) The Church is seeking the entry of judgment as a matter of law on the issue of damages, arguing that the Church, as a charitable organization, is afforded the protection of the twenty thousand dollar cap on damages under Massachusetts General Laws c. 231, § 85K (2008).(# 21) The plaintiff has filed an opposition to the dispositive motion (# 25), a statement of material facts (# 26) and a memorandum of law in support of her opposition. (# 27) At this juncture, the motion for partial summary judgment is poised for resolution.

## II. THE FACTS

At least for purposes of the present motion, the facts are basically undisputed. On December 11, 2005, Giardi was a passenger in a motor vehicle operated by Dunning in Topsfield, Massachusetts. (# 23¶¶ 1, 2; # 26¶¶ 1, 2, 13) Dunning was driving this vehicle for a church youth group trip in which Giardi was participating. (# 23 ¶ 2; # 26¶¶ 2, 14) On this outing, the youth group was planning to visit the outlet shops in Freeport, Maine to go Christmas shopping. (# 23 ¶ 3; # 26 ¶ 3) The trip was a yearly event advertised as a church youth group trip. (# 23¶¶ 6, 7; # 26¶¶ 6, 7) The motor vehicle driven by Dunning was involved in a single-car accident on the way to Maine and Giardi was alleged to have been injured. (# 23 ¶ 1; # 26 ¶¶ 1, 14)

The youth group trip departed from the Christ Church of Hamilton and Wenham, an Episcopal church in South Hamilton Massachusetts, after Sunday services. (# 23 ¶ 2; # 26 ¶ 6) The Christ Church of Hamilton and Wenham is a member of defendant Church, the Domestic and Foreign Missionary Society, which is the corporate and legal embodiment of the Episcopal Church in the United States. (# 23 ¶¶ 4, 5; # 26 ¶¶ 4, 5[2])

At the time of the accident, Giardi was living during the week with family friends in Manchester, Massachusetts and attending high school in Lexington, Massachusetts. (# 23 ¶¶ 9, 10; # 26 ¶¶ 9, 10) Defendant Dunning resided in either Essex or Beverly, Massachusetts. (# 23 ¶ 8; # 26 ¶ 8) The car being driven by Dunning was owned by a resident of Manchester, Massachusetts and registered in Massachusetts. (# 23 ¶¶ 11, 12; # 26 ¶¶ 11, 12, 15)

## III. DISCUSSION

The defendant Church is seeking partial summary judgment on the issue of damages contending that it is a charitable

---

1. Originally the defendant had been denominated Church Agency Corporation Domestic and Foreign Missionary Society. With the amendment the defendant remained the same; the name was merely corrected.

2. The plaintiff claims to be without sufficient knowledge to either admit or deny these facts.

organization and therefore subject to the twenty thousand dollar cap on damages under the first paragraph of Mass. Gen. L. c. 231, § 85K. For purposes of this motion only, the parties have agreed on the following issues. First, the plaintiff does not contest that the law of Massachusetts applies to this case. (# 27 at 2) It is also undisputed that the defendant Church is a "charitable organization" covered by Mass. Gen. L. c. 231, § 85K. (# 27 at 2) Lastly, Giardi does not contend that the youth group trip in question was pursued "in the course of activities primarily commercial in character." Mass. Gen. L. c. 231, § 85K. In other words, the application of the charitable cap is not challenged on the grounds of either the type of organization involved or the nature of activity in which the group was engaged.

The issue to be resolved is whether the Church can claim the charitable damages cap in light of the final sentence of the second paragraph § 85K. The current statute in full reads:

It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of

interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations, the trustees of charitable trusts, and the members of charitable associations shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.

No person who serves as a director, officer or trustee of an educational institution which is, or at the time the cause of action arose was, a charitable organization, qualified as a tax-exempt organization under 26 U.S.C.

501(c) (3) and who is not compensated for such services, except for reimbursement of out of pocket expenses, shall be liable solely by reason of such services as a director, officer or trustee for any act or omission resulting in damage or injury to another, if such person was acting in good faith and within the scope of his official functions and duties, unless such damage or injury was caused by willful or wanton misconduct. The limitations on liability provided by this section shall not apply to any cause or action arising out of said person's operation of a motor vehicle.

Mass. Gen. L. c. 231, § 85K.[3]

The question is whether the last sentence of the second paragraph, i.e., "[t]he limitations on liability provided by this section shall not apply to any cause or action arising out of said person's operation of a

---

**3.** Massachusetts General Laws c. 231, § 85K, the limitation of tort liability of certain charitable organizations, was passed in 1971 as a response by the Legislature to the threat that the courts would do away the traditional defense if the Legislature did not act. *See Colby v. Carney Hospital,* 356 Mass. 527, 254 N.E.2d 407 (1969). In 1971, the Legislature passed Mass. Gen. L. c. 231, § 85K, which consisted

of the current law's first paragraph. *See* Mass. Gen. L. c. 231, § 85K, as inserted by St.1971, c. 785, § 1. Section 85K limits liability of a charitable organization to twenty thousand dollars. In 1987, § 85K was amended to add the second paragraph. *See* Mass. Gen. L. c. 231, § 85K, as amended by St.1987, c. 238.

motor vehicle," added in 1987, applies to the whole of section § 85K or only the second paragraph of that section which deals with educational institutions. Giardi argues that the use of the words "by this section" in the second paragraph (rather than "by this paragraph") means that the limitation on damages to $20,000 does not apply to *any* suit arising out of the operation of a motor vehicle. Or put another way, if there is an allegation of liability based on the use of a motor vehicle, the charitable cap does not apply at all. The Church reads this sentence to apply only to volunteer directors, officers or trustees of educational institutions.

■ Since there is no applicable case law on this point, a close reading of the statutory text is required. When "the language of a statute 'is plain and admits of no more than one meaning' ... [then] 'the sole function of the courts is to enforce the statute according to its terms.'" *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 858 (1 Cir., 1998) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). *See also Commonwealth v. Millican*, 449 Mass. 298, 300–301, 867 N.E.2d 725, 728 (2007) (citing *Department of Community Affairs v. Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 427, 392 N.E.2d 1006 (1979)) ("Ordinarily, we do not look to extrinsic sources to vary the plain meaning of a clear, unambiguous statute unless a literal construction would yield an absurd or unworkable result."). Except for the presence of the word "section" in the sentence in question, the second paragraph of § 85K is unambiguously drafted to be self-contained in its intended application.

It is clear that the reference to "said person" in the final sentence refers to the language of first sentence of the second paragraph, which reads, "[n] o person who serves as a director, officer or trustee of an educational institution." Mass. Gen. L. c. 231, § 85K. The plain meaning of "said person" is that it refers back to the "person" mentioned in the statute occurring in the first sentence of paragraph two. The first paragraph of § 85K refers to "a corporation, trustees of a trust, or members of an association." Mass. Gen. L. c. 231, § 85K. Giardi argues that corporations, trusts and associations are made up of people and that the "operation of the motor vehicle is necessarily done by a 'person.'" (# 27 at 6) However, applying the word "person" which only appears in the second paragraph to this two-tiered inference in order to expand its application to the first paragraph is an unnecessarily forced and awkward reading of the statute. Instead, the use of the word "person" in the second paragraph and its absence from the first paragraph is more reasonably read to indicate that the last sentence is restricted to the second paragraph of the statute, which is directed at individual persons.

Additionally, the first paragraph is significantly different in structure and application from the second paragraph. The first paragraph of § 85K eliminates the defense of charitable immunity, while at the same time limiting recoverable damages to twenty thousand dollars. Mass. Gen. L. c. 231, § 85K, as inserted by St.1971, c. 785, § 1. The second paragraph, as amended in 1987, establishes a complete liability defense for a "person" acting as volunteer director, officer or trustee of an educational institution for actions done in "good faith and within the scope of his official functions." Mass. Gen. L. c. 231, § 85 K as amended by St.1987, c. 238. Thus the first paragraph passed in 1971, and unchanged since, is the Legislature's approach to the common law doctrine of charitable immunity, the purpose of which was "to protect the funds of charitable

institutions so they may be devoted to charitable purposes." *English v. New England Medical Center, Inc.*, 405 Mass. 423, 429, 541 N.E.2d 329, 333 (1989). The second paragraph is the Legislature's extension of that protection to persons who serve as volunteer directors, officers or trustees of educational institutions. This specific extension of liability protection for persons serving a certain type of charitable organization is designed to encourage a commitment of time rather than to protect the resources of an organization.[4] In sum, the structure and history of § 85K support that these sections be read separately.

Giardi argues that the word "section" in the last sentence indicates that the Legislature intended that the motor vehicle exception apply to all charitable entities entitled to the limitation on tort damages. (# 27 at 5) The word "section" in the last sentence of the second paragraph is facially inconsistent with the surrounding grammatical structure which limits that sentence's application to the second paragraph. Given this inconsistency and the absence of case law addressing this issue, it is appropriate to look to the legislative history of the statute for insight into the intent of the Legislature. *See U.S. v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952) ("[W]e may utilize, in construing a statute not unambiguous, all the light relevantly shed upon the words and the clause and the statute that express the purpose of Congress."); *see also Department of Community Affairs v. Massachusetts State College Bldg. Authority*, 378 Mass. 418, 427, 392 N.E.2d 1006, 1011 (1979) ("Reliance on extrinsic aids may be appropriate when the legislative provision is unclear or ambiguous, or when a literal construction would yield an absurd or unworkable result.") An examination of the legislative history of this bill provides a compelling explanation for this seeming inconsistency.

In the original bill produced by the state Senate Judiciary Committee, the preliminary language introducing the 1987 amendment states, "Chapter 231 is hereby amended by adding a new section 85K1/2 immediately following the conclusion of Section 85K with the following language: [followed by the second paragraph cited above]." S. 1822, 1987 Leg. Reg. Sess. (Ma.1987). This preliminary statement clarifies the intent of the Legislature with respect to the ambiguity of the word "section." In drafting senate bill 1822 the state Senate Judiciary Committee conceived of this provision as a separate section limiting the liability of persons serving educational institutions. S. 1822, 1987 Leg. Reg. Sess. (Ma.1987). Given that the bill was originally drafted as a separate section, along with the grammatical structure that supports this conclusion, the reasonable interpretation is that the second paragraph be read as distinct from the first paragraph.[5] The second paragraph expands the original protection for charities to cover a "person who serves as a director, officer or trustee of an educational institution."

Based on this reading of the statute, it is clear that the second paragraph of § 85K

---

**4.** Similarly, the Federal Volunteer Protection Act of 1997, 42 U.S.C. § 14501 (1997), first introduced in 1985, states that its purpose "is to promote the interests of social service program beneficiaries and taxpayers and to sustain the availability of programs, nonprofit organizations, and governmental entities that depend on volunteer contributions by reforming the laws to provide certain protections from liability abuses related to volunteers serving nonprofit organizations and governmental entities."

**5.** The bill was enacted without debate. *See* State House News Service, House and Senate, July 2, 1987, *available at* www.statehousenews.com.

is of no consequence in this case since the Legislature intended to apply the motor vehicle exception to the cap on damages only to "a director, officer or trustee of an educational institution" and not to charitable organizations in general.

Further, the second paragraph of § 85K was added on July 18, 1987. Two weeks later, the Legislature passed Mass. Gen. L. c. 231, § 85W which reads:

> Except as provided otherwise in this section and in section eighty-five V, no person who serves without compensation, other than reimbursement for actual expenses, as an **officer, director or trustee of any nonprofit charitable organization** including those corporations qualified under 26 USC section 501(c)(3) shall be liable for any civil damages as a result of any acts or omissions relating solely to the performance of his duties as an officer, director or trustee; provided, however, that the immunity conferred by this section shall not apply to any acts or omissions intentionally designed to harm or to any grossly negligent acts or omissions which result in harm to the person. Nothing in this section shall be construed as affecting or modifying any existing legal basis for determining the liability, or any defense thereto, of any person not covered by the immunity conferred by this section. Nothing in this section shall be construed as affecting or modifying the liability of any person subject to this section for acts or omissions which are committed in the course of activities primarily commercial in nature even though carried on to obtain revenue to be used for charitable purposes, **nor for any cause of action arising out of such person's operation of an automobile.**

Emphasis supplied.

This section is for all intents and purposes the same as the second paragraph of § 87K except § 87K deals with persons who "serve[ ] as a director, officer or trustee of an educational institution" and § 85W deals with ... "person[s] who serve[ ] .... as an officer, director or trustee of any nonprofit charitable organization." It is clear that in July, 1987, the Legislature wanted to ensure that directors, officers and trustees of both educational institutions and nonprofit charitable organizations remained liable for any acts or omissions committed while operating a motor vehicle. However, there is nothing to indicate that the Legislature intended to eliminate the $20,000 cap on damages which could be imposed on the nonprofit charitable organization itself by reason of a person's negligence while operating a motor vehicle on the charity's behalf or in connection with the activities of the charity.

Put another way, it makes no sense that the Legislature would pass the second paragraph of § 85K, and, under plaintiff's interpretation, by reason of the last sentence of the second paragraph, abrogate the $20,000 cap on damages for motor vehicle negligence for the "charitable corporations, the trustees of charitable trusts, and the members of charitable associations" and then fourteen days later pass § 85W which provides that "officers, directors [and] trustees" of nonprofit charitable organizations enjoy no limitation on liability whatsoever "... for any cause of action arising out of [their] operation of an automobile."

The bottom line is that, notwithstanding the word "section" in the last sentence of the second paragraph of § 85K, the words "said person" in that sentence refers only to "directors, officers [and] trustees of educational institutions", and indisputably, the Church is none of these. Since the parties have agreed to the facts pertinent

to the application of the limitation on damages as described in the first paragraph of § 85K, there remains no further issue that would prevent the entry of summary judgment on the issue of damages. The Church's potential liability in this case "shall not exceed the sum of twenty thousand dollars exclusive of interest and costs."

## IV. CONCLUSION

For the reasons stated, I RECOMMEND that Defendant Dioceses and/or Churches of the Domestic and Foreign Missionary Society's Proposed Motion for Partial Summary Judgment On the Issue of Damages (# 21) be ALLOWED.

## V. REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir.1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *see also Thomas v. Arn,*

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

May 19, 2008.